**IT IS SO ORDERED.**

**Dated:  02:10 PM October 23 2007**

MARILYN SHEA-STONUM
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO. 07-50187 |
| BRIAN D. JOHNSON, ) | |
| ) | CHAPTER 7 |
| DEBTOR ) | |
| ) | |
| ) | |
| ) | |
| LAURIE L. JOHNSON, ) | **ADVERSARY NO. 07-5054** |
| ) | |
| PLAINTIFF, ) | JUDGE MARILYN SHEA-STONUM |
| ) | |
| vs. ) | |
| ) | |
| BRIAN D. JOHNSON, ) | |
| ) | |
| DEFENDANT. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER
I. GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
II. DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
III. DENYING PLAINTIFF'S REQUEST FOR ATTORNEY FEES**

# I. PROCEDURAL BACKGROUND

Plaintiff, Laurie L. Johnson ("Plaintiff"), initiated this adversary proceeding against Defendant-Debtor, Brian D. Johnson ("Defendant"), her former spouse and the debtor in this chapter 7 case, seeking a judgment declaring that (1) Defendant's obligation under the Separation Agreement with respect to the parties' joint credit card debt is not dischargeable pursuant to 11 U.S.C. § 523(a)(15) and that (2) Plaintiff is entitled to an award of attorney fees incurred by her in this adversary proceeding.

Before the Court are the following documents: Motion for Summary Judgment filed by Plaintiff [docket # 21]; Motion for Summary Judgment filed by Defendant [docket #22]; Plaintiff's Response to Defendant's Motion for Summary Judgment [docket #23]; and Defendant's Response to Plaintiff's Motion for Summary Judgment [docket #24]. Pursuant to a pretrial conference on June 26, 2007, the matter was taken under advisement by this Court after the October 3, 2007 briefing deadline elapsed. [*See* docket # 19].

This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I), over which this Court has jurisdiction under 28 U.S.C. §1334(b) and the Standing Order of Reference entered in this District on July 16, 1984.

# II. STIPULATED FACTS

The following facts are not in dispute and are the subject of Joint Stipulations filed by the parties [docket #17]:

1. On or about April 27, 2006, Plaintiff and Defendant entered and signed a Separation Agreement ("Separation Agreement"). Thereafter, on April 28, 2006, a Judgment Entry for Decree of Dissolution ("Decree") was entered and docketed with the

Summit County Court of Common Pleas, Domestic Relations Division.

2. Under the Separation Agreement, Article 14, Plaintiff and Defendant agreed that each would be responsible to pay one-half of the Best Buy, Chase Visa and AT& T Universal credit card debts.

3. On April 28, 2006, both Plaintiff and Defendant reviewed, agreed to and initialed the terms of Article 14 of the Separation Agreement that became part of the Decree.

4. On or about October 25, 2006, Defendant purchased a 2007 Subaru Outback for $31,019.94 and stated his yearly income at $85,000 on the credit application.

5. Defendant traded in a 2005 Subaru Baja 4DR vehicle that was purchased in June 2006, with payment of $400-$500 monthly and incurred a $200 deficiency balance at trade-in according to the purchase agreement for the replacement vehicle with monthly payments of $533, according to the Reaffirmation Agreement filed as Main Case Docket Nos.17 and 25.

6. On November 17, 2006, Defendant filed a Motion in Summit County Domestic Relations Court to reduce his Child Support Obligation.

7. Since the Decree was entered, Plaintiff has continued to make all of the current monthly payments due on all three credit cards, being, Best Buy, Chase Visa and AT&T.

8. In January 2007, Plaintiff paid off the entire balance of the Best Buy credit card debt of $1730.22 even though she was obligated to pay only one-half of the balance under the April 28, 2006 Decree.

9. On January 22, 2007, Defendant filed a voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code. Defendant listed his net take-home pay at

$1,137.67 monthly in Schedule I, which when calculated on an annual basis is $13,652.04. Defendant listed his gross monthly pay at $2,700 in Schedule I, which when calculated is an annual gross salary of $32,400.

10. On February 16, 2007, the Summit County Domestic Relations Court ordered a Modification of Child Support for Plaintiff's and Defendant's three children, from $1,140.00 monthly to $820.82 monthly.

11. On March 24, 2007, Defendant signed and filed with the Court a Reaffirmation Agreement with FirstMerit Bank that listed net monthly income of $3,250, where Defendant agreed and represented to the Court that he had a disposable monthly income of $726 and (sic) monthly vehicle payment of $533.00 for the 2007 Subaru Outback "will not impose undue hardship on my dependents or me." Additionally, the parties have stipulated to the authenticity of the Separation Agreement and Decree [docket #17].

## II. FINDINGS OF FACT

In addition to the foregoing Stipulated Facts, the Court makes the following findings of fact based on the relevant sections of the Separation Agreement and Decree and the pleadings and documents of record in Defendant's main bankruptcy case:

12. The Separation Agreement directly addresses the joint credit card debt (the "Debt") and states:

> 14. INDEBTEDNESS
>
> The parties agree and acknowledge that there are three credit cards totaling $17,950:
>
> Best Buy                $2,200.00

-4-

      Chase Visa                    $9,746.00

      AT & T Universal          $6,000

***The parties agree that they each will be responsible for one-half of each of these debts ($8,973.00)***. These are joint accounts and will be closed once paid off and no further charges will be made to this account. Each party will pay off their one-half of this debt within 36 months. Each will pay at least one-half of the minimum monthly payment on each card and each will be responsible for the interest and charges on his/her portion of these debts. ***Thereafter, each party will be responsible for the debts he or she incurs and they shall indemnify, defend and hold the other party harmless therefrom.***(Emphasis added ).

13.    The Decree states in relevant part:

        It is, THEREFORE, ORDERED, ADJUDGED and DECREED that the marriage of the Petitioners be and hereby is dissolved and that the Separation Agreement is hereby adopted and made a part of this Judgment Entry as if fully rewritten herein."

14.    On Debtor's Schedule F is listed the unsecured debt owed to "Laurie Johnson in the amount of $8,900" for "Potential Obligation Arising From Divorce Decree." This debt is listed as "unliquidated" and "disputed."

### III. DISCUSSION

*A. Summary Judgment Standard*

The court shall grant a movant's motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. The party seeking summary judgment bears the initial burden of production by demonstrating the

absence of any genuine issue of material fact, but the ultimate burden of demonstrating that an issue of fact still remains for trial lies with the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Once the moving party satisfies its burden, the non-moving party must come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Fed. R. Bankr. P. 7056(e). A material fact is one that has the "potential to affect the outcome of the suit under applicable law." *Schweitzer v. Schweitzer*, 370 B.R. 145 (Bankr. S.D.Ohio, 2007) citing *FDIC v. Anchor Props*. 13 F. 3d 27, 30( 1st Cir, 1994)**.** Where questions of law alone are involved, summary judgment is appropriate. *International Ass'n of Machinists v. Texas Steel Co.,* 53. 8 F. 2d 1116, 1119- 121 (5th Cir. 1976) The material facts in this case are not disputed. The issues before the Court are solely questions of law.

*11 U.S.C. § 523(a)(15)*

Because Defendant's chapter 7 petition was filed after October 15, 2005, the effective date for most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Plaintiff's complaint for nondischargeability is governed by the provisions of § 523 of the United States Bankruptcy Code as they existed after BAPCPA's passage.[1] Section 523(a)(15) provides in relevant part that:

> (a) A discharge under section 727, . . . of this section does not discharge an individual debtor from any debt –
>
> (15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5)[domestic support obligation] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other

---

[1] Unless otherwise indicated, all subsequent citations in this Memorandum Opinion shall be to the Post-BAPCPA Code.

order of a court of record, or a determination made in accordance
with State or territorial law by a governmental unit;

The changes made to § 523(a)(15) by BAPCPA removed the balancing language that allowed a debtor to discharge a non-support divorce debt if the debtor could demonstrate that the debtor did not have the ability to pay the debt or the benefit of discharge to the debtor is greater than the detriment to the former spouse. It is no longer necessary for the court to make such a determination. The plain language of the statute now provides that all debts which do not qualify as domestic support obligations are nondischargeable. *Douglas v. Douglas* (*In Re Douglas*), 369 B.R. 462, 464 (Bankr. E.D. Ark. 2007).

As retired Judge William Houston Brown states in his Bankruptcy and Domestic Relations Manual:

> Former section 523(a)(15) is changed completely by deletion of its
> subpart (A) and (B), which had often been called the 'affirmative
> defenses' to the section's nondischargeability.....Essentially, the
> combination of section 523(a)(5) and 523(15) excludes from
> discharge all marital and domestic relations obligations, whether
> support in nature, property division, or hold harmless...."

Hon. William Houston Brown, *Bankruptcy and Domestic Relations Manual*, § 1:3.

In summary, to be excepted from discharge under this provision, the debt must: (1) be to a spouse, former spouse, or child of the debtor; (2) not be of the type described in § 523(a)(5), i.e. not a domestic support obligation; and (3) have been incurred in the course of a divorce or separation or in connection with a separation agreement, divorce, decree, or other order of a court. The party contesting the dischargeability of a debt has the burden of proving these elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287 (1991); *Hart v. Molino*, 225 B.R. 904, 907 (B.A.P. 6th Cir.); *Hammermeister v. Hammermeister (In re Hammermeister)*, 270 B.R. 863, 876 (Bankr. S.D. Ohio 2001). The

parties do not dispute that the Debt is not a domestic support obligation, but instead, one in the nature of property settlement. Therefore, the Court's analysis will be confined to elements (1) and (3).

As a threshold matter, this Court will address Plaintiff's contention that the hold harmless language in Article 14 of the parties' Separation Agreement requires Defendant to indemnify her for the Debt. *See* Stipulated Fact #12. Plaintiff refers specifically to the last sentence of Article 14: "*Thereafter, each party will be responsible for the debts he or she incurs and they shall indemnify, defend and hold the other party harmless therefrom*" (Emphasis added ). This Court's reading of the plain meaning of this sentence simply does not result in the same interpretation. The placement of the phrase "Thereafter.....incurs" following the explanation of pay-off terms for the Debt appears to contemplate the accumulation of any new debt by the parties *after* the divorce, separate and apart from the Debt listed in the preceeding paragraph. Likewise, the term "therefrom" following the phrase "hold the other party harmless" would refer to the parties' obligation to indemnify one another from any post-divorce debt. At best, it is at least unclear that the hold harmless language in Article 14 applies to the Debt. That aside, as will be discussed in this Memorandum Opinion, the presence or absence of hold harmless language is not, standing alone, determinative of Plaintiff's nondischargeability claim under § 523(a)(15).

Defendant argues that the debt is not owed to or recoverable by a "spouse, former spouse, or child of the debtor," but is instead owed directly to third party credit card issuers and, therefore, does not come within the scope of § 523(a)(15). He also contends that the debt was not "incurred by the debtor in the course of a divorce or separation or in connection

-8-

07-05054-mss    Doc 25    FILED 10/23/07    ENTERED 10/23/07 15:12:36    Page 8 of 14

with a separation agreement" because the obligation arose prior to the divorce and Separation Agreement. Defendant maintains that the Separation Agreement merely references a preexisting agreement that he was already obligated to pay and does not create new debt for purposes of § 523(a)(15).

Courts are divided on the issue of whether debts owing to third parties and not subject to indemnification or hold harmless language fall within the ambit of § 523(a)(15). The controlling authority on this point in the Sixth Circuit is the case of *Gibson v. Gibson*, 219 B.R. 195 ( B.A.P. 6th Cir. 1998). *Gibson* stands for the proposition that an obligation incurred in connection with a separation agreement incorporated into a dissolution decree is excepted from discharge as nonsupport divorce debt notwithstanding that the debt is payable to a third party and the agreement lacks specific "hold harmless" language. *Id.* at 205-06. Pursuant to *Gibson*, for a debt to qualify for treatment under §523(a)(15), the critical issues are the nature of the debt, not the payee, and whether under state law the debt was incurred in the course of a divorce or separation. *Id.* at 203.

In *Gibson*, debtor and his former spouse were jointly liable on a promissory note to a third party, debtor's stepfather. A separation agreement, which was later incorporated into a decree of dissolution, provided that the debtor would pay the note. The debtor thereafter filed a chapter 7 petition listing the joint obligation under the note in his schedules. Approximately two months later, the debtor's stepfather commenced an action in state court against debtor's former spouse seeking judgment against her on the note. She then sought a determination in the bankruptcy court that the debtor's sole responsibility for payment of the note be declared nondischargeable. There was no "hold harmless" or indemnification

-9-

language regarding the former spouse and her liability on the note in the separation agreement.

The Bankruptcy Appellate Panel, reversing the decision of the Bankruptcy Court, stated as follows in pertinent part:

> The debtor argues that since there is no absolute direction to pay money directly to his [former spouse], there is no debt to the [former spouse]. ***This is a misreading of the language of the statute and its intent.*** Section 523(a)(15) does not require that a court order the debt be paid directly to the spouse. The statute provides that a debtor is not discharged from *any* debt incurred by the debtor in the course of a divorce or in connection with a divorce. The statute does not impose a 'direct pay' requirement.
>
> Second, although there is no 'hold harmless' language in the decree or complaint...the debtor incurred a debt to [his former spouse] in connection with the divorce proceeding. Based on that order, the debtor incurred a debt in connection with the divorce within the meaning of section 523(a)(15).
>
> ....
>
> ... In this case, as a result of the Separation Agreement incorporated into the Dissolution Decree, the Debtor incurred an obligation to 'pay any and all debts to his parents, if any[,]' and [the former spouse] acquired the right to enforce such total payment of the Note by postdissolution remedies."

*Gibson,* 219 B.R. at 203-04 (Emphasis added) (alteration not in original).

The Panel further reasoned as follows:

> ***As between the debtor and [the former spouse], however, the domestic relations court's entry of the Dissolution Decree had significant new legal consequences***. The entry of the Dissolution Decree extinguished all pre-existing obligations of the parties to each other....The Separation Agreement incorporated into the Dissolution Decree replaced those obligations with new ones fully enforceable as a judgment of the domestic relations court. Further, in the Dissolution Decree, the Debtor incurred an additional obligation in favor of the former spouse to pay any and all debts, including the note..... This obligation is fully enforceable by the

-10-

> former spouses against the Debtor. ***Finally, and most significantly, the former spouse obtained, as a result of applicable Ohio law, a new right to payment and related enforcement rights, all of which were incurred by the Debtor in connection with the parties' Separation Agreement as incorporated into the domestic relations court's Dissolution Decree***.

*Id*. at 204-5.(Emphasis added).

As a result of this analysis, the Panel then concluded:

> The Panel holds that Debtor's obligation to pay the Note.......was incurred by the Debtor in connection with the Separation Agreement incorporated into the Dissolution Decree and therefore satisfies the qualifying language of §523(a)(15), ***notwithstanding that the debt is payable to a third party and the Separation Agreement lacks hold harmless or other indemnification language***.

*Id*. at 205 (Emphasis added).

In another case with facts very similar to the instant case, *Shreffler v. Shreffler*, 319 B.R. 113 (Bankr. W.D. Pa. 2004), as part of the property settlement between the parties, the common pleas court ordered, *inter alia*, that the parties were to equally share in the payment of a joint Discover Card debt until it was paid in full. The property settlement agreement did not contain hold harmless language. One of the nondischargeability issues before the bankruptcy court involved the debtor's obligation to pay one-half of the Discover Card. The Court held that, "[r]egarding the Discover Card debt, 'although the divorce proceedings did not alter either parties' personal liability to (Discover Card) it did create a new liability running from the Debtor to Plaintiff which was not in existence prior to commencement of...the divorce proceeding." *Id.* at 117, citing *Manix v. Mannix*, 303 B.R. 587, 596 (Bankr. M.D. Pa. 2003).

The *Shreffler* Court, citing *Gibson*, further held that under the relevant statutory provisions and case law, the dissolution decree itself was an enforceable judgment creating

new legal consequences, and the lack of a specific hold harmless provision in the property settlement agreement was not controlling as to the applicability of § 523(a)(15) in determining the issue of nondischargeability. *Id.* at 120, citing *Mannix*, 303 B.R. 587; *Gibson,* 319 B.R. 195.

Other courts have concurred with the holdings in *Gibson* and *Shreffler*, i.e., that a property settlement agreement incorporated by a divorce decree that apportions third party debt to one spouse means that the obligor-spouse indemnifies the obligee-spouse in the event that the obligee is required to pay, even if there is no "hold harmless" language in the decree or complaint. *See Douglas v. Douglas (In re Douglas)*, 369 B.R. 462, 464, n. 2 (Bankr. E.D. Ark. 2007); *Montgomery v. Montgomery (In re Montgomery)*, 310 B.R. 169, 176-77 (Bankr. C.D. Ca. 2004); *Crawford v Osborne (In re Osborne)*, 262 B.R. 435, 442 (Bankr. E.D. Tenn. 2001); *Lester v. Baker (In re Baker)*, 274 B.R. 176, 195-96 (Bankr. D. S.C. 2000); *In re Sturdivant*, 289 B.R. 392, 399; *Johnston v. Henson ( In re Henson)*,197 B.R. 299, 303 (Bankr. E.D. Ark. 1996); *Schmitt v. Eubanks (In re Schmitt)*, 197 B.R. 312 (Bankr. W.D. Ark 1996) .

In the case *sub judice*, the Separation Agreement and Decree allocated to Defendant responsibility for one-half of the Debt. This Court has considered the relevant authorities together with the intent of Post-BAPCPA § 523(a)(15) that all debts which qualify as nonsupport debt be nondischargeable, and concludes that Defendant had a legal obligation, agreed upon by his divorce, to pay one-half of the Debt and to indemnify Plaintiff for any amounts she was required to pay due to Defendant's failure to pay his portion. That obligation arose from the property settlement agreement despite the absence of specific 'hold

-12-

harmless' language, and created a new liability running from Defendant to Plaintiff that was not in existence prior to the commencement of the divorce proceeding. Accordingly, Defendant's obligation to pay one half of the Debt is excepted from dischargeable pursuant to 11 U.S.C. § 523(a)(15).

***Attorney Fees***

Plaintiff argues that she is entitled to an award of attorney fees incurred in relation to the prosecution of this adversary proceeding. Specifically, Plaintiff contends that Defendant engaged in a continued pattern of fraud, misrepresentation, and willful disregard by failing to meet his obligation under the Separation Agreement, and that his "willful refusal" to comply constitutes bad faith. Plaintiff's argument is predicated on this Court's equitable powers to allow an exception to the so-called "American Rule," which governs the issue of who will bear the cost of attorney fees in litigation in federal courts.[2] *See Fazio v. Coupe (In re Coupe),* 51 B.R. 939, 943 (Bankr. N.D. Ohio 1985) citing *F.D. Rich Lumber Co. v. Industrial Lumber Co.*, 417 U.S. 116, 126 (1974).

In this case, the issue of attorney fees arose in a post-petition time frame. Therefore, it is an issue more appropriately left to the expertise of the Domestic Relations Court. This Court should not address an unliquidated, post-filing claim for attorney fees in the context of a nondischargeability action. By virtue of her § 523(a)(15) nondischargeability claim, Plaintiff is in essence attempting to enforce her rights under the Separation Agreement. Article 16 of the Separation Agreement states that "[e]ach party will be responsible for

---

[2]The American Rule establishes as a general principle that each party should bear the costs of its own legal representation absent statutory or contractual authorization allowing recovery from the opposing party. *Fazio v. Coupe, 51 B.R. at 943; see also, Alyeska Pipeline Service Company v. Wilderness Society*, 421 U.S. 240, 247 (1975).

-13-

payment of their own attorney fees. Court costs will be divided equally between the parties." [Defendant's Motion for Summary Judgment, Exhibit A, p. 6]. Article 16 is silent as to whether it applies to enforcement of the terms of the Separation Agreement, yet another reason why this issue is better left in the hands of the Domestic Relations Court. Accordingly, an award of attorney fees is only appropriate if the Domestic Relations Court so determines.[3]

## CONCLUSION

For the reasons discussed in this Memorandum Opinion, as to the issue of dischargeability of the Debt, Plaintiff's motion for summary judgment is **GRANTED**. Defendant's motion for summary judgment is **DENIED**. The Court will make a separate entry of judgment in this proceeding that is consistent with this Memorandum Opinion.

*###*

cc: (via electronic mail)    Shirley A. Simon, Counsel for Plaintiff
　　　　　　　　　　　　　　Lisa Barbacci Afarin, Counsel for Plaintiff
　　　　　　　　　　　　　　Michael Moran, Counsel for Defendant-Debtor
　　　　　　　　　　　　　　Robert S. Thomas, II, Trustee

---

[3] In support of her argument that Defendant acted in bad faith, Plaintiff points to the apparent disparities in Defendant's reported income as set forth in the various pleadings and filings in his main bankruptcy case. [See Stipulated Fact Nos. 5, 6, 9, 10, and 11; Main Case docket # 17]. For that reason, this Court has served a copy of this Memorandum Opinion on the chapter 7 Trustee for further investigation and appropriate action if necessary.

-14-